

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: '22 MJ01680 |
| Plaintiff, | COMPLAINT FOR VIOLATION OF |
| v. | Title 21, U.S.C., Secs. 841(a)(1) and 846 – Conspiracy to Distribute Cocaine, Methamphetamine, and Heroin (Felony) |
| JUAN CRUZ (1), MARIO JARAMILLO (2), MANUEL PEREZ-HERRERA (3), VANESSA RAMIREZ (4), LUZ DE LUNA OLMOS (5), ADRIAN ENRIQUEZ (6), | |
| Defendants. | |

The undersigned complaint being duly sworn states:

### COUNT 1

Beginning on a date unknown and continuing up to and including May 12, 2022, within the Southern District of California, defendants JUAN CRUZ, MARIO JARAMILLO, MANUEL PEREZ-HERRERA, VANESSA RAMIREZ, LUZ DE LUNA OLMOS, and ADRIAN ENRIQUEZ did combine, conspire, and agree together and with each other, and with other persons known and unknown, to distribute 5 kilograms and more, to wit, approximately 799.3 kilograms (1,762.15 pounds) of cocaine, a Schedule II Controlled Substance; in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

### COUNT 2

Beginning on a date unknown and continuing up to and including May 12, 2022, within the Southern District of California, defendants VANESSA RAMIREZ and LUZ DE LUNA OLMOS, did combine, conspire, and agree together and with each other, and with other persons known and unknown, to distribute 500 grams and more, to wit, approximately 74.8 kilograms (164.91 pounds) of methamphetamine, a Schedule II Controlled Substance; in violation of Title 21, United States Code,

Sections 841(a)(1) and 846.

## COUNT 3

Beginning on a date unknown and continuing up to and including May 12, 2022, within the Southern District of California, defendants VANESSA RAMIREZ and LUZ DE LUNA OLMOS, did combine, conspire, and agree together and with each other, and with other persons known and unknown, to distribute 1 kilogram and more, to wit, approximately 1.6 kilograms (3.53 pounds) of heroin, a Schedule I Controlled Substance; in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

The complainant states that this complaint is based on the attached Statement of Facts incorporated herein by reference

_____
GUSTAVO VALDIVIA
Special Agent
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 14th day of May, 2022.

_____
Hon. JILL L. BURKHARDT
United States Magistrate Judge

2

## PROBABLE CAUSE STATEMENT

I, Special Agent Gustavo Valdivia, declare under penalty of perjury, the following is true and correct:

On May 12, 2022, law enforcement authorities were conducting surveillance on a residence at 620 E. 4th Street (hereinafter "the residence") in National City, California, because it was used in a smuggling event on March 2, 2022, which resulted in an arrest of one person and the seizure of 28 kilograms of cocaine.

At approximately 11:45 AM, two females, later identified as Luz De Luna OLMOS ("OLMOS") and Vanessa RAMIREZ ("RAMIREZ") left the residence in a silver Nissan Frontier pickup, (hereinafter "the Frontier"). OLMOS and RAMIREZ drove the Frontier to a Harbor Freight store in Chula Vista, California where they retrieved large cardboard boxes from a dumpster and put them into the Frontier. OLMOS and RAMIREZ then entered the Harbor Freight store and purchased wheeled moving carts that are typically used to move heavy items. OLMOS and RAMIREZ later returned to the residence in the Frontier and removed the boxes from the back of the pick-up bed and carried them inside the residence. At about 1:20 PM, OLMOS left the residence and drove to a Walmart store where she purchased additional cardboard boxes and transported them back to the residence.

At approximately 2:30 PM, RAMIREZ drove the Frontier away from the residence and drove to a warehouse located at 9986 Via De La Amistad, Unit A in San Diego, California, (hereinafter "the warehouse"). The warehouse is approximately 300 feet north of the US/Mexico border fence and half a mile from the Otay Mesa Port of Entry. An unknown male came out the first glass door closest to the street and waved RAMIREZ into the warehouse. He opened the roll-up garage door closest to the street and RAMIREZ drove the Frontier into the bay of the warehouse and the roll-up door was shut immediately after. At approximately 4:40 PM, the warehouse door opened. RAMIREZ exited the warehouse in the Frontier and drove back to the residence with law enforcement authorities following her. Within approximately ten minutes of the Frontier departing the warehouse, law enforcement authorities observed a white Ford van (hereinafter "the van") drive out from the same bay door of the warehouse and drive directly to the residence. The van was driven into the garage of the residence at approximately 5:07 PM. Based on my knowledge, training and experience, these facts are indicative of the movement of drugs from a stash location adjacent to the border, likely associated with a cross-border tunnel, to a stash house used to facilitate the further distribution of those drugs away from the border. I have had extensive training and experience in narcotic smuggling specifically in the San Diego area, and more recently, I have

been involved in multiple seizures and arrests involving narcotic smuggling in which I was the case agent.

At approximately 5:40 PM, an individual, later identified as Manuel PEREZ-Herrera ("PEREZ"), arrived at the residence in a Jeep Cherokee (hereinafter "the Jeep"). PEREZ parked the Jeep on the street and walked into the residence. PEREZ moved the van out of the garage and parked it on the street in front of the residence. PEREZ returned to the residence and drove the Jeep into the garage at approximately 5:47 PM. At approximately 5:57 PM, PEREZ exited the garage in the Jeep and drove away from the residence. Law enforcement authorities followed the Jeep and conducted a traffic stop after observing a that the rear license plate was obstructed partially. Law enforcement authorities used a Narcotics Detection Dog (NDD), which alerted to the trunk of the Jeep. PEREZ gave law enforcement authorities consent to search the Jeep. During a search of the Jeep, law enforcement authorities located eight boxes which contained approximately 240 kilogram-sized bricks of suspected narcotics. A presumptive test was conducted on a random brick of the suspected narcotics found in the Jeep. The suspected narcotics tested positive for the presence of cocaine.

At approximately 6:12 PM, a red Toyota Prius (hereinafter "the Prius") was driven into the alley near the open garage of the residence. Law enforcement authorities saw the hatchback of the Prius open. Only the hatchback door was visible

to agents, as the rest of the Prius was obscured by the garage. The Prius left approximately two minutes later and stopped at a nearby market while law enforcement authorities watched. The driver of the Prius, later identified as Juan CRUZ ("CRUZ"), spoke with an individual, later identified as Mario JARAMILLO ("JARAMILLO"), in a gray Toyota Camry (hereinafter the "Camry") that was parked near him. CRUZ and JARAMILLO began moving large cardboard boxes from the Prius to the Camry. Law enforcement authorities contacted the drivers of both vehicles because they had knowledge of the discovery of narcotic packages in HERERRA's vehicle after he left the residence. Approximately 55 bricks of suspected narcotics, similar to those found in the Jeep, were found in five boxes in the Camry. A presumptive test was conducted on a random brick of the suspected narcotics found in the Camry. The suspected narcotics tested positive for the presence of cocaine.

At approximately 6:25 PM, a blue Chevrolet Equinox (hereinafter "the Equinox") pulled into the garage of the residence for a short amount of time, then exited the garage and drive away from the residence. Law enforcement authorities followed the Equinox and performed a traffic stop after observing that the Equinox did not have a working rear tail light. Law enforcement authorities spoke with the driver, identified as Adrian ENRIQUEZ, who gave consent to search the Equinox. Law enforcement authorities asked ENRIQUEZ if he had specific types of narcotics

including methamphetamine, heroin and cocaine inside the Equinox. ENRIQUEZ replied "no" to heroin and methamphetamine but had a visible reaction when asked about cocaine. Inside the vehicle, law enforcement authorities found five boxes in the trunk and a sixth box in the rear seat. The boxes contained large sized packages wrapped in black tape similar to those found in the Jeep and the Camry. A presumptive test was conducted on a random package of the suspected narcotics found in the Equinox. The suspected narcotics tested positive for the presence of cocaine.

Law enforcement authorities continued surveillance on the residence and observed OLMOS and RAMIREZ walking towards the Frontier, which was parked in front of the residence on the curb. Law enforcement authorities detained both OLMOS and RAMIREZ. Law enforcement authorities read RAMIREZ her Miranda Rights while standing outside the residence. RAMIREZ waived her rights and told law enforcement authorities that she rented the residence through the Airbnb application on her phone. RAMIREZ stated that she drove the Nissan Frontier to the warehouse. She stated that she was at the warehouse when boxes from the warehouse were loaded into the van. RAMIREZ stated that the van was later driven to the residence by someone she did not know. RAMIREZ further stated that there were boxes of narcotics loaded into the Frontier while she was at the warehouse and that those boxes were still in the Frontier.

A state search warrant was sought and authorized for the residence and the warehouse. Pursuant to the warrant, law enforcement authorities searched both locations. Additional packages of narcotics were found in the residence that tested positive for cocaine, methamphetamine, and heroin. In total, law enforcement authorities seized approximately 799.3 kilograms (1,762.15 pounds) of cocaine from the vehicles and residence, 74.8 kilograms (164.91 pounds) of methamphetamine from the residence, and 1.6 kilograms (3.53 pounds) of heroin from the residence.

No additional narcotics were found at the warehouse. However, law enforcement authorities discovered a tunnel that ended in the warehouse and appears to lead south into Mexico.

In a post Miranda statement, JARAMILLO admitted to transporting narcotics to Los Angeles County and stated he was getting paid approximately $1,200.00 to do so.

OLMOS stated that she helped put boxes together and taped them shut. She further stated that she thought the packages in the boxes contained marijuana.

PEREZ denied knowledge of the narcotics in the boxes that he transported in the Jeep.

ENRIQUEZ denied knowledge of the narcotics in the boxes that he transported in the Equinox. ENRIQUEZ stated he thought he was going to be paid for transporting the boxes but did not know how much.

All six of the above-mentioned subjects were arrested and taken into state custody. Each of these six individuals will be moved to federal custody on or before early morning, May 16, 2022.

Executed on May 14, 2022, at \_\_\_\_\_9:00 AM_____

*/s/ AValdivia*

Gustavo Valdivia, HSI Special Agent

On the basis of the facts presented in this probable cause statement consisting of 6 pages, I find probable cause to believe the defendants, Manuel PEREZ Herrera, Mario JARAMILLO, Juan CRUZ, Adrian ENRIQUEZ, Luz de Luna OLMOS and Vanessa RAMIREZ named in this probable cause statement, committed the offense on May 12, 2021, in violation of Title 21 USC 841 and 846, Distribution of a Controlled substance and Conspiracy to Distribute a Controlled Substance.

*/s/ Jill Burkhardt*     5/14/22 11:34 am

JILL. Burkhardt            Date/Time

United States Magistrate Judge

7